### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| YVETTE S. ATKINSON,<br><br>    Plaintiff,<br><br>vs.<br><br>STEPHEN PUSTILNIK, M.D.; et al.,<br><br>    Defendants | Case No. 22-cv-4315 |

### THIRD AMENDED COMPLAINT

1.    Plaintiff Yvette S. Atkinson ("Plaintiff" or "Ms. Atkinson"), by and through her attorneys, Quainton Law, PLLC, and Ty Clevenger, as and for her Complaint against Defendants Stephen Pustilnik, M.D. ("Dr. Pustilnik"), Judge J.P. George ("Judge George"), Vincent Morales ("Commissioner Morales"), Grady Prestage ("Commissioner Prestage"), W.A. Andy Meyers ("Commissioner Meyers"), Kenneth De Merchant ("Commissioner DeMerchant"), Dexter McCoy ("Commissioner McCoy") and Fort Bend County Texas ("Fort Bend County" or the "County") and, collectively with Dr. Pustilnik, Judge George, Commissioner Morales, Commissioner Meyers, Commissioner DeMerchant, Commissioner McCoy and Fort Bend County, the "Defendants"). Judge George and the other Commissioners are referred to collectively in this Third Amended Complaint as the County Commissioners.

### INTRODUCTION

2.    Plaintiff is the widow of Simon J. Atkinson ("Mr. Atkinson"), who died of a

gunshot wound on June 5, 2020. As set forth below, Fort Bend County Medical Examiner Stephen Pustilnik falsified Mr. Atkinson's death certification, with the knowledge and approval of the remaining Defendants, thus violating Plaintiff's substantive due process and equal protection rights and causing Plaintiff extreme emotional distress and business harm in the process.

## Jurisdiction and Venue

3.     This Court has jurisdiction under 28 U.S. Code §1331 because Plaintiff's claims arise under federal law. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.     Venue is proper in this district and division because all parties reside, work or are located in Fort Bend County, Texas.

## Parties

5.     Plaintiff is woman of Mexican origin whose maiden name is Sanchez. Plaintiff is a lifetime resident of Fort Bend County, Texas.

6. Dr. Pustilnik is the medical examiner for Fort Bend County, Texas. He reports to the Fort Bend County Commissioners Court, and he is sued solely in his individual capacity. Dr. Pustilnik was previously the medical examiner for Lubbock County and shortly before he was hired by Fort Bend County, he was reported to law enforcement for his pattern of preparing unsupported and unsubstantiated death certificates. He had been in the news earlier for his mishandling of evidence in a murder case.

7.     Judge George is the county judge and presiding officer of the Fort Bend

County Commissioners Court. He is sued solely in his individual capacity.

8.    Commissioner Morales is a member of the Fort Bend County Commissioners Court. He is sued solely in his individual capacity.

9.    Commissioner Prestage is a member of the Fort Bend County Commissioners Court. He is sued solely in his individual capacity.

10.    Commissioner Meyers is a member of the Fort Bend County Commissioners Court. He is sued solely in his individual capacity.

11.    Commissioner DeMerchant served on the Fort Bend County Commissioners Court from January 1, 2019 until December 31, 2022.  He is sued solely in his individual capacity.

12.    Commissioner McCoy has been a member of the Fort Bend County Commissioners Court since January 1, 2023.

13.    Fort Bend County, Texas is a municipality organized under the laws of the State of Texas. The Fort Bend County Commissioners Court is the final policy-making authority for Fort Bend County.

## Statement of Facts

### *The Death of Simon Atkinson.*

14.    Plaintiff's husband, Simon J. Atkinson, died of a gunshot wound on June 5, 2020 in Sugar Land, Texas. The Fort Bend County Assistant Medical Examiner, forensic pathologist William McClain, M.D., performed an autopsy within days and found no evidence of foul play.

15.    The Sugar Land Police Department (hereinafter "SLPD") investigated and

quickly concluded that Mr. Atkinson died of suicide. SLPD performed firearms tests using the gun that was found near Mr. Atkinson's body, and SLPD used the ammunition that was found in Mr. Atkinson's pocket. The striation marks matched, indicating (1) that the gun found near Mr. Atkinson's body was the gun that he used to kill himself and (2) that the ammunition in his pocket matched the fatal bullet. Nothing at the scene where Mr. Atkinson's body was found indicated that there was a struggle or any sort of foul play, and the trajectory of the bullet was consistent with suicide. Mr. Atkinson's body was released to the family and the body was cremated.

16.     Mr. Atkinson likely took his own life at least in part because the COVID-19 pandemic caused serious harm to his business. That business was the family's sole source of income. Plaintiff was entitled to receive $1 million in death insurance benefits, and she needed (and still needs) that money to keep the family business in operation and to support her son.

17.     Approximately one week after the autopsy was completed, Plaintiff's brother, Steven Sanchez, called Dr. Pustilnik on behalf of Plaintiff and asked why there was no finding from the Medical Examiner's office regarding Mr. Atkinson's cause of death. The Assistant Medical Examiner for Fort Bend County had already conducted an autopsy and determined there was no evidence of homicide, and the SLPD had confirmed that the death was a suicide, before the body was released to the family for cremation.

18.     Mr. Sanchez told Dr. Pustilnik that Mr. Atkinson's body could not be released for cremation (to respect Mr. Atkinson's wishes) without a death certificate, and their discussion quickly turned into a heated argument. Thereafter, Dr. Pustilnik retaliated by

refusing to list a cause of death on Mr. Atkinson's death certificate. Dr. Pustilnik's refusal

to provide a final death certificate also violated Plaintiff's substantive due process interest

in obtaining the certificate in a timely manner.

### *Defendants are Directly Notified of Dr. Pustilnik's Delay in Issuing a Death Certificate for Mr. Atkinson.*

19.     Several months after Mr. Atkinson's death, still in 2020, which would prove

to be *years* before Dr. Pustilnik would ultimately issue the final death certificate, Mr.

Sanchez began calling Judge George on behalf of Plaintiff and twice tried to meet with

Judge George in his official office, leaving messages that Dr. Pustilnik was refusing to

issue a death certificate with a cause of death. After Mr. Sanchez finally reached Judge

George, the latter claimed that he could do nothing because of the Medical Examiner's

ongoing investigation, thus clearly establishing that he knew of Dr. Pustilnik's conduct

and was well aware that interested parties had expressed concern that Dr. Pustilnik was

unreasonably delaying the issuance of Mr. Atkinson's death certificate.

### *The County Commissioners Refuse to Act in the Face of Dr. Pustilnik's Unwarranted and Unreasonable Conduct Outside His Area of Professional Expertise.*

20.     For more than one year after the County Commissioners had been notified

of Dr. Pustilnik's inexplicable dilatory conduct, Dr. Pustilnik would neither finalize the

death certificate nor even convene an inquest to resolve any unanswered questions that

he purportedly had.

21.     Dr. Pustilnik is meant to operate under the strict control and direct, even

day-to-day supervision of the County Commissioners, as the Court determined in ruling

that the tight supervisory control exercised by the County Commissioners over Dr.

Pustilnik excused him from an obligation to execute an oath of office required of more independent public officials.

22.   Under this tight control and supervision, Dr. Pustilnik has the statutory authority to convene an inquest to determine causes of death.[1] The statute does not authorize Dr. Pustilnik to conduct firearms and ballistic studies or perform tasks that are not within his competency as a medical doctor.

23.   In this case, the Assistant Deputy Examiner had already performed an autopsy, and SLPD had conducted its own investigation and produced its own firearms report, determining that Mr. Atkinson had died as a result of a suicide. The Texas Code of Criminal Procedure does not authorize the medical examiner to conduct tests outside his area of competency to contradict the findings of law enforcement.

24.   The County Commissioners at no time intervened to inform Dr. Pustilnik that he had an obligation to execute his duties in a timely manner.

### *The County Commissioners Continue to Take No Action in the Face of Dr. Pustilnik's Irrational Conduct and Unwarranted Delays.*

25.   When Dr. Pustilnik finally convened an inquest – after the SPLD had already concluded its investigation and determined that Mr. Atkinson's cause of death was a suicide – rather than confining himself to the evidence before him, he ordered Ms. Atkinson to produce all ammunition in the Atkinson household that had been purchased for the firearm that Mr. Atkinson used to kill himself (amount to 75 rounds), purportedly so Dr. Pustilnik, who had no professional certification of any kind that would enable him

_____

[1] *See* Texas Code of Criminal Procedure Article 49.25 § 6.

- 6 -

to contradict the findings of the SLPD, could conduct his own firearms test.

26.    Dr. Pustilnik informed Mr. Sanchez and a police detective that he would personally conduct the firearms test. Dr. Pustilnik also ordered Defendant Atkinson to appear at the inquest and testify before him under oath.

27.    Dr. Pustilnik has never had any qualifications whatsoever to conduct a firearms test. Firearms tests are conducted by law enforcement agencies, not medical doctors. If Dr. Pustilnik had known anything about firearms tests, he would have known that he did not need 75 rounds to conduct such a test. He already had possession of the firearm that Mr. Atkinson used to kill himself, and he could have *purchased* the exact same ammunition to determine if the striation on the bullets matched those on the round that killed Mr. Atkinson. Moreover, the SLPD already had already performed firearms tests *using the actual bullets found in Mr. Atkinson's pocket*.

28.    Unfortunately, a local justice of the peace ordered Plaintiff to produce all of the ammunition to Dr. Pustilnik anyway. She did so notwithstanding a letter from an SLPD detective stating that its investigation of Mr. Atkinson's death was closed.

29.    Dr. Pustilnik suggested that he did not believe the official conclusion of the SLPD and insinuated that Plaintiff was guilty of murdering her husband. Dr. Pustilnik knows that Plaintiff is of Mexican origin (her maiden name is Sanchez, which is also her brother's last name) and displayed vicious and unbridled animus against her as a result of her ethnic background. Plaintiff suffered severe emotional distress as a result of Dr. Pustilnik's delay in issuing the death certificate and his false and unfounded insinuations against her.

30.    Dr. Pustilnik engaged in other dilatory conduct that the Commissioners should have prevented in the exercise of their supervisory control over an inferior officer so tightly supervised that he was excused from the obligation to execute an oath of office.

### *The Commissioners Ratify Dr. Pustilnik's Conduct*.

31.    Dr. Pustilnik received all of the ammunition on June 1, 2022, but took no action until Plaintiff's Counsel sent a letter to the Fort Bend County Commissioners Court on October 3, 2022 explaining the history of retaliation and bad-faith delays. A copy of that letter is attached as Exhibit 1 and incorporated herein by reference.

32.    In response, in a letter dated October 5, 2022, counsel for the County Commissioners and the County blamed *Plaintiff* for the delays, alleging that the delays were Plaintiff's fault because she did not produce all of the ammunition sooner. This letter demonstrates that as of October 5, 2022, the County Commissioners had already ratified Dr. Pustilnik's performance of an unnecessary examination outside his area of competency.

33.    The County Commissioners knew or should have known – based on their attribution of blame to Plaintiff – that Plaintiff had been represented by counsel who had fought Dr. Pustilnik's demand for the ammunition on the grounds that the request was baseless, overbroad, unsupported by probable cause, and yet another excuse for delay. By the time Dr. Pustilnik requested the ammunition, the SLPD had already closed its investigation.

34.    The Commissioners knew that a medical examiner's insistence on personally conducting a duplicative firearms test after law enforcement had had already

conducted an official firearms test was unprecedented in Fort Bend County.

35.    In the October 5, 2022 letter, counsel for the County Commissioners did not mention, and unmistakably validated Dr. Pustilnik's performance of, a firearms test he was professionally incompetent to conduct. Counsel for Fort Bend County wrote that he had "communicated [Plaintiff's] frustration to Dr. Pustilnik and he has agreed to proceed expeditiously to determine cause of death and issue the appropriate certificate as soon as possible." Counsel did not mention that the County Commissioners had any concern with a medical doctor performing a firearms test.

36.    In an email dated October 13, 2022, Plaintiff's counsel expressly informed Defendants that Dr. Pustilnik was retaliating against Plaintiff and warned the County and the Commissioners that they could be held liable for Dr. Pustilnik's retaliation against Plaintiff:

> …I would note that the county judge and the commissioners are not protected by legislative immunity if they ratify ongoing retaliation against someone such as my client. *See, generally, Hughes v. Tarrant Cnty. Tex.*, 948 F.2d 918, 920 (5th Cir. 1991) and *Lloyd v. Birkman*, 127 F. Supp. 3d 725, 774 (W.D. Tex. 2015). If there is a legitimate reason why Dr. Pustilnik cannot produce the death certificate by the end of the month, then please let us know. Otherwise, we will conclude that the county judge and the commissioners have ratified his actions toward my client, and we will proceed with federal litigation against them as well as the county and Dr. Pustilnik.

### ***Defendants Ratify Dr. Pustilnik's Unprecedented and Unnecessary Firearms Test***.

37.    In a response that same day, counsel for the County unmistakably evinced the County's ratification of Dr. Pustilnik's personal firearms testing, writing as follows:

> Dr. Pustilnik has completed his preliminary testing, and the results are being forwarded to a licensed firearms examiner at the Department of Public Safety. Dr. Pustilnik is hopeful of receiving their input in the near future such that he will be able to determine the cause and manner of death and issue a death certificate

within the next 30-45 days.

38.    The County thus ratified Dr. Pustilnik's decision to perform his own

personal firearms test – rather than using the test prepared by law enforcement – as the

basis for further study by the Department of Public Safety. The County knew that Dr.

Pustilnik was accused of retaliating against Plaintiff and knew that Dr. Pustilnik had a

motive to prepare a false, unreliable, and unprofessional report, when he was already in

possession of the police department's official analysis, yet ratified his conduct regardless.

39.    In another email on October 13, 2022, Plaintiff's Counsel warned that the

whole firearms test was "bogus and wholly unwarranted, and we intend to present expert

testimony to that effect."

> Relatedly, we believe that if the commissioners looked into the matter, they would
> learn the same thing. For that reason, we believe the commissioners will be subject
> to supervisory liability if they fail to take immediate action to reign in Dr.
> Pustilnik.

40.    The County Commissioners totally ignored this email and permitted Dr.

Pustilnik to proceed, further ratifying his unwarranted, self-serving, and unprofessional

conduct. Again, the unprecedented nature of Dr. Pustilnik's conduct must be underscored.

It is unprecedented in Fort Bend County for a medical examiner under the tight

supervision and control of the County Commissioners who have excused him from taking

an oath of office, to make a policy determination that a law enforcement ballistics report

cannot be trusted and must be cast aside and replaced by the report of a person without any

relevant experience.

41.    As of the date that the Original Complaint was filed, Dr. Pustilnik still had

not issued a death certificate.

**_The Hiring of Dr. Pustilnik_**.

42.    Before he was hired by the Fort Bend County Commissioners in 2019 when the County decided to create the office of medical examiner,[2] Dr. Pustilnik had and has a terrible reputation among Fort Bend County prosecutors and law enforcement officers. In 2013, Dr. Pustilnik was fired from his position as Chief Medical Examiner for Galveston County when a child murderer was set free because Dr. Pustilnik mishandled evidence. https://www.usatoday.com/story/news/nation/2014/10/28/child-killer-free/18047873/. Later in 2019, and just before he was hired by Fort Bend County, Dr. Pustilnik was reported to the Lubbock County District Attorneys' Office for making "unsubstantiated" and "unsupported" findings, including with respect to homicidal injury. Fort Bend County had a duty to perform a minimal background check on Dr. Pustilnik to determine his suitability for the newly created post of medical examiner for the entire County. The Commissioners manifestly failed to conduct an appropriate level of due diligence or they never would have hired an individual who had been fired from one position for mishandling evidence and reported to law enforcement for his conduct in a second position. In hiring a person with all the red flags presented by Dr. Pustilnik the Commissioners were more than "asleep at the wheel;" they were deliberately indifferent.

**_The Supervision of Dr. Pustilnik._**

43.    Beginning in 2021 Dr. Pustilnik openly and notoriously misused the Fort Bend County morgue as a backdrop for his gruesome "side hustle" of selling cooking

_____

[2] https://www.fortbendcountytx.gov/government/departments/medical-examiner-s-office.

knives, sharpened by Dr. Pustilnik's experience in slicing and carving human flesh. *See*

*https://youtu.be/2VPSlfz65h8* *("What knife do I use most in my life . . . it's my autopsy*

*knife").* Dr. Pustilnik's misuse of the morgue appears to be a criminal violation of Section

39.02 of the Texas Penal Code. Had the County Commissioners been performing the level of

supervision of a medical examiner they had excused from the obligation to execute an oath of

office because of their tight supervisory control over his conduct, they never would have

permitted a public official to use county property to promote a personal business. This is

analogous to Judge George selling air conditioners from his office while bragging about how

cool his newly installed system was keeping him. No reasonable person could possibly

conclude that such conduct by a public official is appropriate or permissible.

44.    A person who exploits his professional position and county property to

promote his own personal business poses a clear and present danger to individuals who

rely on his neutrality and objectivity. If Dr. Pustilnik would so egregiously misuse his

professional position to further his personal ends, it is entirely conceivable that he would

use his official power to discriminate against and abuse individuals such as Plaintiff

45.    As a result, the County Commissioners had a duty to supervise Dr. Pustilnik,

and either rein in his self-interested conduct or terminate his services altogether

46.    With the exercise of ordinary diligence, the Commissioners would have been

able to prevent the hiring of an incompetent and vindictive examiner such as Dr. Pustilnik

or would have been ablet to terminate his services before he had harmed Plaintiff by

preparing a fabricated death certificate falsely implying that Plaintiff was a murderer.

### *Dr. Pustilnik Issues His False Death Certificate in Retaliation and Animus Against Plaintiff for Pursuing Him in her Complaint.*

47.    On January 30, 2023, nearly four months after Plaintiff had directly warned the Commissioners that Dr. Pustilnik was a dangerously incompetent examiner with a history preparing false, "unsubstantiated" and "unsupported" death certificates, Dr. Pustilnik released an updated death certificate.

48.    Even more shockingly, after waiting nearly _three years_ to issue the death certificate, a little more than one month after Plaintiff sued him, out of nowhere and contradicting all available competent evidence – that of the Assistant Medical Examiner who performed the autopsy and the official results of the SLPD investigation – Dr. Pustilnik suddenly determined that Mr. Atkinson's suicide was . . . a homicide!

49.    This extraordinary finding should have led to an immediate independent examination by the County Commissioners, but, incredibly, the County Commissioners have taken no action in over 18 months following Dr. Pustilnik's astonishing and eye-raising fabrication.

50.    SLPD detectives and other medical examiners will testify that there was no basis to classify Mr. Atkinson's death a homicide, and certainly not on the basis of Dr Pustilnik's personal firearms test conducted at a shooting range after an autopsy has been performed, the body cremated and the official investigation closed.

51.    According to a January 31, 2023 email, Dr. Pustilnik asked SLPD detectives to come to his office so he could try to persuade them to accept his half-baked conspiracy theory about Mr. Atkinson's death. Dr. Pustilnik asked the detectives to bring a 6'2 man with them, apparently so he could demonstrate his conspiracy theory. If Dr. Pustilnik had actually familiarized himself with the case that he purportedly was investigating, however,

- 13 -

he would have known that Mr. Atkinson was six feet tall, not 6'2. Tellingly, the detectives

declined Dr. Pustilnik's invitation to watch a demonstration of his conspiracy theory.

52.    Dr. Pustilnik classified Mr. Atkinson's death a homicide for one of multiple

impermissible reasons:

  a.  He wanted to further retaliate against Ms. Atkinson because she filed
      this lawsuit.
  b.  He was motivated by ethnic, racial and/or gender animus against
      Plaintiff;
  c.  He deliberately created an after-the-fact justification for his inordinate
      delays in releasing a final death certificate once his liability was put at
      issue by the filing of Plaintiff's lawsuit.

### ***Defendants' Deliberate Indifference to Plaintiff's Rights***.

53.    In acting as set forth above, Dr. Pustilnik exhibited deliberate indifference to

Plaintiff's property rights in the timely receipt of a valid death certificate. The County

Commissioners were themselves deliberately indifferent to the serious ongoing risk to

residents' property rights by maintaining in office a Chief Medical Examiner focused on

using his gruesome experience in slicing bodies to market kitchen knives, with a checkered

past marked notably by mishandling evidence and preparing unsubstantiated and

unsupported conclusions, who had rushed a half-baked and patently unsubstantiated report

out in immediate response to a lawsuit that put his personal liability at issue. .

54.    When this lawsuit was filed, it received considerable attention from local

media. On February 1, 2023, a county representative asked SLPD and the City of Sugar

Land to direct all communications about Mr. Atkinson's death to the county so Dr.

Pustilnik could direct the response to any such communications. In other words,

 Dr. Pustilnik was worried about the public relations disaster that he created, so he wanted

to take control of the narrative.  SLPD and the City of Sugar Land declined Dr. Pustilnik's request.

### *The Unequal Treatment of Plaintiff*.

55.    According to data voluntarily produced by SLPD to the Plaintiff, eight suicides occurred in Sugar Land in calendar year 2022, and the number of days between each respective suicide and the issuance of a final death certificate were as follows: 17, 20, 43, 39, 58, 97, 60, and 62 days, for an average of 49.5 days. SLPD reported six homicides from January 1, 2020 until February 14, 2023, and the number of days between each respective homicide and the issuance of a final death certificate were as follows: 215, 98, 58, 120, 38, and 18 days, for an average of about 91 days. It took Defendant Pustilnik 958 days to issue a final death certificate for Mr. Atkinson, *i.e.*, more than four times as long as the next-nearest homicide and more than ten times the average for a homicide.

56.    The Plaintiff examined death investigation records from multiple jurisdictions in Fort Bend County. Most of the autopsies were performed by deputy medical examiners, *i.e.*, persons other than Defendant Pustilnik. In only one of those cases did Defendant Pustilnik "take over" a case in which the autopsy had been performed by someone else and then substitute his own finding for the cause of death. That case was the death of Simon Atkinson. On information and belief, the Plaintiff alleges that Defendant Pustilnik has never done this on any other case during his tenure as Fort Bend County Medical Examiner.

57.    Multiple comparators in Fort Bend County illustrate how Defendant Pustilnik

singled out the Plaintiff for differential treatment.

58.    Khalil Khan died of gunshot wounds on August 4, 2021 in Sugar Land. Deputy Medical Examiner Karen Ross ruled his death a homicide on March 7, 2022, some 215 days later. That's the third-longest period for the issuance of a death certificate since 2020, and it is still 743 days faster than the time it took to issue a death certificate for Mr. Atkinson.

59.    On November 11, 2021, an unnamed male died from a gunshot wound outside Katy Mills Mall in Fort Bend County. Like Mr. Atkinson, the decedent had been shot in the head. Four days later, on November 15, 2021, Dr. Ross finished the autopsy and ruled the death a suicide.

60.    Howard Hargrove died of a gunshot wound to the head on May 23, 2022 in Sugar Land. As in the case of Mr. Atkinson, Mr. Hargrove's wife was at home but in another room at the time of the shooting, and a handgun was found near his body. Dr. Uribe performed the autopsy and 39 days later, on July 1, 2022, he ruled that Mr. Hargrove's death was a suicide.

61.    Connor Jacob Bowen died of gunshot to the head on July 14, 2022 in Sugar Land. Defendant Pustilnik conducted the autopsy and on April 19, 2023 he ruled that the death was a suicide.

62.    Kanishk Giri died of a gunshot wound to the head on August 6, 2022 in Sugar Land. On November 11, 2022, 279 days later, the Fort Bend County Medical Examiner's office ruled that his death was a suicide. That is the second-longest period for issuance of a death certificate since 2020, and it is still 679 days faster than it took to

issue a death certificate for Mr. Atkinson.

63.     On July 16, 2022, Steven Lobue died of a gunshot wound to the head in Sugar Land. No witnesses were present. Fifty-eight days later, on September 12, 2022, Deputy Medical Examiner Paul Uribe ruled that the death was a suicide.

64.     On October 11, 2022, Taylor Hough was found in his vehicle in Sugar Land with a gunshot wound to the head and a handgun nearby. His death was ruled suicide on December 10, 2022 by Deputy Medical Examiner Katherine Callahan.

65.     On January 18, 2023, Ryan Nauls was discovered behind a house in Missouri City with a gunshot wound to the head. A week later, on January 25, 2023 the Fort Bend County Medical Examiner had completed its autopsy and ruled that his death was a suicide.

66.     On March 2, 2023, the husband of Dana Iurussi discovered her dead in their home with a gunshot wound to the head. On May 2, 2023, Dr. Callahan declared that her death was a suicide.

67.     James Marz of Missouri City shot himself inside a home in Missouri City on March 21, 2023 while others were present in the home. Less than a month later, on April 19, 2023, the Fort Bend County Medical Examiner's Office ruled that his death was a suicide.

68.     Lantonia Faulk died of multiple gunshot wounds on April 16, 2023 in Sugar Land. On December 12, 2023, Defendant Pustilnik ruled that her death was a homicide.

69.     Christopher Jones II died of a gunshot wound to the head on June 4, 2023 in Sugar Land. Deputy Medical Examiner Morna Gonsoulin ruled on June 30, 2023 that his

death was a homicide.

70.   While this sample size is not exhaustive of the total number of suicide and homicide deaths by gunshot during the full period that Plaintiff encountered Dr. Pustilnik's unconscionable delays, the size is large enough to support a clear, plausible inference of disparate treatment such that Plaintiff should be permitted discovery to establish a larger data set demonstrating the alleged equal protection violation resulting from Dr. Pustilnik's disparate treatment of Plaintiff as opposed to other County residents whose next-of-kin died from a gunshot wounds and had a property interest in timely issued and accurate death certificates.

### Fort Bend County Admits its Direct Supervisory Control of Dr. Pustilnik and Liability for His Actions.

71.   Shortly after filing her Original Complaint, Ms. Atkinson learned that Dr. Pustilnik had never executed his oath of office nor executed the bribery statement required by the Texas Constitution. That is significant because on April 6, 2022, Dr. Pustilnik convened an inquest, presided over the inquest in judicial fashion in a formal courtroom, and ordered Plaintiff to appear at the inquest and testify, without allowing her the opportunity to present witnesses or perform any cross-examination. Indeed, Dr. Pustilnik abruptly cut short the inquest and never completed it before finalizing his death certificate on the basis of a firearms report Plaintiff had never seen and whose author – Dr. Pustilnik himself – acted as judge, jury and expert witness in making his false accusations.

72.   The County Commissioners knew that Dr. Pustilnik was operating without having executed an oath of office, a situation that courts have only tolerated when the

public official is subject to close, direct, and nearly day-to-day supervision of the activities of the official acting without an oath of office. In *Arredondo v. State*, 406 S.W.3d 300, 304 (Tex. App. 2013), the Court of Appeals concluded that a medical examiner who was a "public employee" and subject to the strict and direct supervision of the County Commissioners was not required to take an oath of office. The Court in *Arredondo* stated that a public officer who can exercise a sovereign function for the benefit of the public in a manner "largely independent" of the control of others, must execute an oath of office. Conversely, if the officer is not required to take an oath of office, he or she much be subject to tight, direct control and may not take action independently of the control of his superiors. In *Arredondo*, the individual was medical examiner was excused from taking the oath of office because:

> [The medical examiner testified that the Commissioners] "supervise every function of my department, everything from my employees to who I can hire, how many employees I can have, what my work schedule can be, what my budget is, how I use that budget." The medical examiner testified that she worked under the "direct supervision" of the Commissioners and received "numerous" calls every week regarding her job from the Commissioners.

*Arredondo*, 406 S.W.3d at 303 (Tex. App. 2013).

73.   To the extent the Commissioners now admit that Dr. Pustilnik was operating without executing an oath of office, they are admitting either that they were intimately involved in his decision making – with respect to his inordinate delays, his unprecedented "medical" firearms study, and his self-serving "homicide" finding – and therefore responsible for his conduct, or that they permitted a man with Dr. Pustilnik's propensity for preparing unsubstantiated and unsupported findings to operate without supervision and without requiring him to execute an oath of office, a disturbing dereliction of duty

and an equal failure of their supervisory duties.

74.    In addition, it appears that Dr. Pustilnik is not an employee, but merely a private physician working for South Coast Forensics, LLC as an independent contractor, who would necessarily have to be independent of the direct control of the Commissioners as a matter of employment law. *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 365 (5th Cir. 2023).

75.    But hiring an independent contractor and entrusting him with discretion to conduct quasi-judicial inquests without direct control, and without requiring the contractor to take an oath of office, would underscore even further the supervisory failures of the Commissioners.

76.    On February 24, 2023, a document examiner David Fisher submitted a public information request to the Fort Bend County Auditor seeking proof that Dr. Pustilnik was being paid as an employee, not as an independent contractor. The county auditor ignored the request for more than ten business days, contrary to state law. When Mr. Fisher inquired about his request on March 29, 2023, the county auditor told him that the request had been forwarded to the county attorney's office. As of this date, Mr. Fisher still has not received a response to his request for payment records. The Plaintiff alleges that county officials are trying to conceal the fact that Dr. Pustilnik is merely a contractor, and as such he is not entitled to qualified immunity in this case.

***Fort Bend County Closes Ranks Behind Dr. Pustilnik, Refusing to Investigate and Clearly Ratifying His Conduct***.

77.    On February 17, 2023, Plaintiff's Counsel sent a letter to the Fort Bend County Commissioners, and that letter is attached as Exhibit 4 and incorporated herein by reference. Plaintiff's Counsel informed the Commissioners that SLPD already had

performed firearms tests long before Dr. Pustilnik claimed that he needed to conduct

firearms tests. Counsel also informed the Commissioners about the data provided by

SLPD regarding the average length of time to issue a death certificate for a suicide or a

homicide. And Plaintiff's Counsel reminded the commissioners that he sent a letter

(Exhibit 1) on October 3, 2022 – prior to the time that Ms. Atkinson filed suit – asking the

commissioners to intervene and exercise supervisory authority over Dr. Pustilnik:

> Had the commissioners made any reasonable inquiry at that time, they would have
> discovered that Sugar Land PD had already conducted a firearms test, and there
> was no reason to conduct another. Likewise, they could have and should have put
> a stop to Dr. Pustilnik's ongoing retaliation against my client.

*See* February 17, 2023 Letter (Exhibit 4). Despite this, the Commissioners dug in, and

continued to fail to supervise, warn, or even investigate Dr. Pustilnik.  In his February

17, 2023 letter, Plaintiff's Counsel further wrote as follows:

> I request that the commissioners conduct an independent investigation of Dr.
> Pustilnik's actions, specifically his baseless decision to classify Mr. Atkinson's
> death as a homicide. The commissioners could and should have an independent
> medical examiner evaluate his findings. If the commissioners investigated, I think
> they would find that the law enforcement agencies in Fort Bend County have no
> confidence in Dr. Pustilnik. And if the commissioners want to investigate Dr.
> Pustilnik, my client is willing to stay her lawsuit for a reasonable period of time
> while the investigation is underway.

*Id.* Plaintiff's Counsel warned the commissioners that their continued failure to act would

be evidence of ratification and/or deliberate indifference, but the commissioners never

responded to the letter.

        78.    Atkinson's request for an independent review was not without precedent.

In one of the attachments that Ms. Atkinson provided to the Commissioners with the

October 3 2022 letter, Lubbock County Medical Examiner Sam Andrews, M.D. wrote

that a senior independent medical examiner had been hired to review Dr. Pustilnik's

conclusion that a decedent died of homicide. The conclusions of the independent

examiner were damning.

> The results of the detailed report offered by that pathologist includes statements such as "the cause of death certification [offered by Dr. Pustilnik] was medically illogical and invoked an unsubstantiated possibility of homicidal injury."

> In light of the serious concerns that have been uncovered during the evaluation of work performed by Dr. Pustilnik, I recommend a full review of all criminal cases handled by Dr. Pustilnik during his tenure in Lubbock County.

Exhibit 3 (emphasis added). Mr. Fisher has made Ms. Atkinson aware of other egregious

misconduct by Dr. Pustilnik during his tenure as chief medical officer in Galveston

(where, unlike in Fort Bend County, he was required to execute an oath of office), and

Mr. Fisher informs Ms. Atkinson that he will soon be making complaints to the Texas

Medical Board and the State Commission on Judicial Misconduct.

### ***Dr. Pustilnik Irresponsibly Implies Plaintiff was Involved in the Alleged Homicide, Causing Severe Business and Reputational Damage***.

79.     In his original motion to dismiss (Dkt. #4), Dr. Pustilnik laid bare the vicious

nature of his conduct and the irresponsibility the Commissioner's have impermissibly

tolerated and protected.

80.     Dr. Pustilnik all but directly accused Plaintiff of murdering her husband for

financial gain:

> Atkinson insists her husband's cause of death was a suicide — making her the recipient of $1 million in insurance benefits. Atkinson's belief is so strong she demanded that Pustilnik, Fort Bend County's Chief Medical Examiner, list suicide as the cause of her husband's death on his death certificate to expedite payment.

81.     The County Commissioners have not repudiated these defamatory

accusations and have taken no action to control Dr. Pustilnik or investigate his outrageous statements, instead presenting themselves as fully aligned with Dr. Pustilnik.

82.    Ms. Atkinson had no reason to suspect that Dr. Pustilnik would do something so outrageous as falsifying the cause of death on Mr. Atkinson's death certificate. She never "demanded" that Dr. Pustilnik list suicide as a cause of death. Instead, she assumed – mistakenly – that Dr. Pustilnik would follow the determinations of the assistant medical examiner who conducted the autopsy and the law enforcement officials who conducted a firearms test in concluding that Mr. Atkinson had taken his own life.

83.    Plaintiff also naively believed that the County Commissioners would step in to order an independent investigation rather than standing behind and in effect ratifying the Dr. Pustilnik's defamatory and incredibly damaging implications.

84.    Dr. Pustilnik is subject to criminal charges for falsifying Mr. Atkinson's cause of death and faces potential criminal charges for official oppression. *See* Texas Penal Code § 39.03.  The County Commissioners could put an end to Dr. Pustilnik's illegal conduct at any time, but they have instead been deliberately indifferent to, and have ratified, his egregious behavior.

## COUNT 1
### First Amendment Retaliation
### (Dr. Pustilnik)

85.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above

86.    Plaintiff engaged in protected First Amendment activity by filing the present lawsuit.

87. Dr. Pustilnik engaged in First Amendment retaliation by falsely classifying Mr. Atkinson's death as a homicide after the filing of and retaliation for the filing of this lawsuit.

88. Although Dr. Pustilnik was operating as a private independent contractor, he was acting under a "color of law" in falsely determining, after a quasi-judicial inquest, that Mr. Atkinson's death was a homicide.

89. As a result of the foregoing, Dr/ Pustilnik is liable for damages, including emotional distress damages, business damages, and damages to her commercial relationships, caused by the falsification of Mr. Atkinson's death certificate and the implicit shocking and false accusation that Plaintiff murdered, or was complicit with the murderer of, her own husband, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

## COUNT II
### First Amendment Retaliation
### Supervisory Liability under 18 U.S.C. § 1983
### (All Defendants other than Dr. Pustilnik)

90. Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

91. The Court has held that Dr. Pustilnik was not required to execute an oath of office because of the direct and ongoing supervision required to be exercised by County Commissioners over a medical examiner acting as a "public employee."

92. The County Commissioners were directly notified of the specific misconduct alleged against Dr. Pustilnik on multiple occasions and failed to exercise, and were

deliberately indifferent to, their supervisory duties to ensure that a "rogue" independent contractor would not falsify a death certificate for retaliation or any other reason.

93.    The County Commissioners excused Dr. Pustilnik from the obligation to execute an oath of office, thereby committing themselves to exercise direct and ongoing supervision over Dr. Pustilnik's actions in the conduct of his inquest.

94.    However, the County Commissioners not only failed to exercise the required supervision of Dr. Pustilnik, but they also retained as an independent contractor through South Coast Forensics, LLC, ***knowing*** that they would be required as a matter of employment law ***not*** to exercise direct supervision over Dr. Pustilnik (since independent contractors cannot be directly supervised by superiors acting as an employer), thereby automatically rendering themselves liable for Dr. Pustilnik's acts.

95.    Fort Bend County is liable for the conduct of the County Commissioners as a matter of law.

96.    As a result of the foregoing, Fort Bend County and the County Commissioners (together, the "County Defendants" ) have supervisory liability for the falsified death certificate prepared by Dr. Pustilnik, and are liable to Plaintiff for damages, including emotional distress damages, damages to her business and commercial relationships, resulting from the receipt of a falsified death certificate and the shocking implication that she murdered her own husband, or was complicit with the murderer, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**COUNT III**
**First Amendment Retaliation**

## Ratification under 18 U.S.C. § 1983
### (County Defendants)

97.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

98.    The County Defendants were directly and specifically notified by Plaintiff that Dr. Pustilnik had retaliated against her by issuing a false and defamatory death certificate that contradicted the official investigation of SLPD.

99.    Despite this express notification and their resulting knowledge that Dr. Pustilnik had prepared a death certificate that contradicted the findings of the SLPD, and that Dr. Pustilnik falsely and maliciously implying that Plaintiff was involved in her husband's murder, the County Defendants took no action of any kind, failing to issue any warning, censure or reprimand for Dr. Pustilnik's conduct, and failing to conduct any independent investigation into the actual circumstances of Mr. Atkinson's death, despite counsel's offer to stay the present litigation while the investigation was pending, and despite the County Commissioners' exempting of Dr. Pustilnik from the otherwise applicable obligation to take an oath of office, thereby adopting and ratifying Dr. Pustilnik's false conclusions.

100.    As a result of the County Defendants' ratification of Dr. Pustilnik's falsified death certificate,  the County Defendants are liable to Plaintiff for damages, including emotional distress damages, damages to her business, and damages to her commercial relationships, resulting from the receipt of a falsified death certificate and the shocking and utterly false implication that she murdered her own husband, or was complicit with the

murderer, in an amount to be determined at trial, together with an award of punitive

damages and attorneys' fees under 18 U.S.C. § 1983.


## COUNT IV
## Violation of Substantive Due Process
## (Dr. Pustilnik)

101.   Plaintiff realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs above.

102.   Upon the death of her husband, Plaintiff had a substantive property interest in

the timely issuance of an accurate death certificate necessary among other things to apply

for insurance benefits, settle her husband's estate, access pension claims, transfer property,

get re-married (if she were ever to need legal proof that her  husband had passed), arrange

for a funeral, access personal and business financial accounts and information, including

bank accounts, 401k retirement plans, IRAs, T-bills, outstanding personal and commercial

loans or credit card balances.

103.   Plaintiff was denied her substantive property rights in the timely and accurate

issuance of a death certificate without due process of law.

104.   Among other things, Dr. Pustilnik did not permit Plaintiff to introduce

evidence contradicting Dr. Pustilnik's firearms report or to cross-examine Dr. Pustilnik

with respect to the means of conducting and necessity for the firearms report. In fact, to this

day, Dr. Pustilnik has not submitted the firearms report to Plaintiff or counsel.

105.   In effect, Dr. Pustilnik acted as judge and jury in the inquest, performing the

firearms examination himself and then determining the weight to be given to his own

examination as opposed to the independent examination of law enforcement, in violation of the most elementary notions of due process.

106.    As a result of the foregoing, Dr. Pustilnik is liable for the damages suffered by Plaintiff, including emotional distress damages, business damages, and damages to her commercial relationships, caused by the violation of her substantive due process rights in the timely and accurate issuance of a death certificate, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**COUNT V**
**Violation of Procedural Due Process**
**(Dr. Pustilnik)**

107.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

108.    Plaintiff was denied her property rights in a timely and accurate death certificate without due process of law.

109.    Dr. Pustilnik did not permit Plaintiff to introduce evidence at the inquest and did not subject himself to cross-examination with respect to the results of his firearms test.

110.    The adjudication of rights without an opportunity to present evidence or cross-examine dispositive testimony provided by the trier of fact at a quasi-judicial hearing violates procedural due process.

111.    As a result of the foregoing, Dr. Pustilnik is liable for the damages suffered by Plaintiff, including emotional distress damages, business damages, and damages to her commercial relationships, caused by the violation of her substantive due process rights in

the timely and accurate issuance of a death certificate, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

## COUNT VI
### Violation of Substantive and Procedural Due Process
### Supervisory Liability
### (County Defendants)

112.   Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

113.   Plaintiff had a substantive due process interest in the timely issuance of an accurate death certificate.

114.   As set forth in Count II above, the County Defendants have supervisory liability for the violation of Plaintiff's substantive due process rights resulting from the delayed and falsified death certificate prepared by Dr. Pustilnik.

115.   The County Defendants are therefore liable for the damages suffered by Plaintiff, including emotional distress damages, business damages, and damages to her commercial relationships, caused by the violation of her substantive due process rights in the timely and accurate issuance of a death certificate, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

## COUNT VII

**Violation of Substantive and Procedural Due Process**
**Ratification**
**(County Defendants)**

116.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

117.    Plaintiff had a substantive due process interest in the timely issuance of an accurate death certificate.

118.    As set forth in Count III above, the County Defendants ratified Dr. Pustilnik's conduct and are therefore liable for the violation of Plaintiff's substantive due process rights resulting from the delayed and falsified death certificate prepared by Dr. Pustilnik.

119.    As a result of the foregoing, the County Defendants are liable for the damages suffered by Plaintiff, including emotional distress damages, business damages, and damages to her commercial relationships, caused by the violation of her substantive due process rights in the timely and accurate issuance of a death certificate, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**COUNT VIII**
**First Amendment Retaliation**
**Bystander Liability**
**(County Defendants)**

120.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

121.    The County Defendants knew that Dr. Pustilnik was impermissibly delaying the issuance of death certificate and retaliating against Plaintiff.

122.    Plaintiff's counsel expressly and directly informed the County Defendants of Dr. Pustilnik's conduct in delaying the issuance of the death certificate as part of his petty vindictiveness against Plaintiff's brother.

123.    The County Defendants also knew that Dr. Pustilnik had prepared a false death certificate that directly contradicted the findings of the SLPD made close to the time of Mr. Atkinson's death.

124.    The County Defendants had months to step in and exercise the power they had over Dr. Pustilnik before he issued his false death certificate and they have had nearly two years to correct his findings, order a new inquest, conduct a new investigation, or fire Dr. Pustilnik, but the County chose to take no action to insist that Dr. Pustilnik comply with his duties, produce a death certificate in a timely manner, produce an accurate certificate, correct the false death certificate, conduct a new inquest, conduct a new investigation, or otherwise prevent the harm to Plaintiff from the violation of her First Amendment rights as a result of Dr. Pustilnik's retaliatory conduct.

125.    As a result of the foregoing, the County Defendants are liable to plaintiff under 18 U.S.C. § 1983 for the damages resulting from the issuance of the false death certificate, including emotional distress damages, damages to Plaintiff's business, and damages to her commercial relations, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**COUNT IX**
**Violation of Substantive Due Process**
**Bystander Liability**
**(County Defendants)**

126.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

127.    Plaintiff had a substantive due process interest in the timely issuance of an accurate death certificate.

128.    The County Defendants knew that Dr. Pustilnik was delaying the issuance of death certificate Plaintiff.

129.    Plaintiff's counsel expressly and directly informed the County Defendants of Dr. Pustilnik's conduct in delaying the issuance of the death certificate as part of his petty vindictiveness against Plaintiff's brother.

130.    The County Defendants also knew that Dr. Pustilnik had prepared a false death certificate that directly contradicted the findings of the SLPD made close to the time of Mr. Atkinson's death.

131.    The County Defendants had months to step in and exercise the power they had over Dr. Pustilnik before he issued his false death certificate and they have had nearly two years to correct his findings, order a new inquest, conduct a new investigation, or fire Dr. Pustilnik, but the County chose to take no action to insist that Dr. Pustilnik comply with his duties, produce a death certificate in a timely manner, produce an accurate certificate, correct the false death certificate, conduct a new inquest, conduct a new investigation, or otherwise prevent the harm to Plaintiff from the ongoing violation of her substantive due process rights.

132.    As a result of the foregoing, the County Defendants are liable to plaintiff under 18 U.S.C. § 1983 for the damages resulting from the issuance of the false death

certificate, including emotional distress damages, damages to Plaintiff's business, and damages to her commercial relations, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**COUNT X**
**Violation of Equal Protection**
**(Dr. Pustilnik)**

133.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

134.    Plaintiff had a substantive right to receive a timely and accurate death certificate for her husband's death.

135.    Based on data voluntarily produced to Plaintiff by the SLPD, the average length of time for the production of a final death certificate in 2022 in cases involving suicide by gunshot in Fort Bend County was 49.5 days.

136.    Based on data voluntarily produced to Plaintiff by the SLPD the average length of time for the production of a final death certificate in 2022 in cases involving gunshot homicides in Fort Bend County was 91 days.

137.    Dr. Pustilnik did not deliver a final death certificate ***until nearly three years*** after the death of Simon Atkinson, ***nearly 20 times*** the average reported time taken to deliver a final death certificate in gunshot wound suicides in Fort Bend County in 2022 and ***more than 10 times*** the average reported time taken to deliver a final death certificate in

gunshot wound suicides in Fort Bend County in 2022. In addition, the time taken to deliver a death certificate for Mr. Atkinson was ***over 10 times*** as the longest time it had taken in any other gunshot suicide to deliver a death certificate and ***more than four and a half times*** as the longest time it had taken in any other gunshot suicide to deliver a death certificate

138.    The disparate treatment of Plaintiff and other individuals entitled to receive death certificates for deaths involving either suicide by gunshot or homicide by gunshot violates the equal protection clause of the Fourteenth Amendment.

139.    There was no rational basis for Dr. Pustilnik's delay in issuing a death certificate, because the ostensible reason for the delay – the need to conduct a "medical" firearms report – was both nonsensical and unnecessary in light of the previous firearms report conducted by LSPD.

140.    In addition, there is *prima facie* evidence that Dr. Pustilnik was animated by ethnic animus against Plaintiff and his violation of Plaintiff's equal protection rights is therefore subject to strict scrutiny.

141.    As a result of the delay in the issue of a death certificate, Dr. Pustilnik is liable to Plaintiff under 18 U.S.C. § 1983 for damages, including emotional distress damages, business damages, and damages to customer relations, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages.

## COUNT XI
### Violation of Equal Protection
### Supervisory Liability
### (County Defendants)

142.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

143.    As set forth in Count II above, the County Defendants have supervisory liability for Dr. Pustilnik's conduct, and are therefore liable for his violation of Plaintiff's equal protection rights.

144.    The County Defendants were specifically and directly informed that Dr. Pustilnik was baselessly delaying the issuance of a death certificate and the County Defendants specifically knew that Dr. Pustilnik was conducting an unnecessary firearms/ballistic report he was incompetent to conduct as a medical doctor. In fact, the County Defendants had such specific knowledge of Dr. Pustilnik's conduct that they blamed Plaintiff for Dr. Pustilnik's delay.

145.    The County Defendants knew that the SLPD had already prepared a firearms report based on their professional experience with guns, gunshots, and gunshot deaths, and that there was no rational basis for a medical doctor to conduct a firearms test to disprove the findings of law enforcement.

146.    As a result of their supervisory liability for Dr. Pustilnik's unjustified and irrational conduct, the County Defendants are liable to Plaintiff under 18 U.S.C. § 1983 for damages, including emotional distress damages, business damages, and damages to customer relations, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages.

147.    The County Defendants now are unmistakably fully aware that Dr. Pustilnik's death certificate contradicts the findings of law enforcement based on an unnecessary and irrational firearms study performed by an incompetent medical doctor and have chosen to take no action to determine whether the death certificate is false or accurate and have

further supervisory liability under 18 U.S.C. § 1983 for Plaintiff's damages resulting from the issuance of a false death certificate, including emotional distress damages, business damages, and damages to customer relations, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages.

**COUNT XII**
**Violation of Equal Protection**
**Ratification**
**(County Defendants)**

148.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

149.    As set forth in Count III above, the County Defendants ratified Dr. Pustilnik's conduct and are therefore liable for his violation of Plaintiff's equal protection rights.

150.    Plaintiff had a substantive right to receive a timely and accurate death certificate for her husband's death.

151.    The County Defendants were specifically and directly informed that Dr. Pustilnik was baselessly delaying the issuance of a death certificate and the County Defendants specifically knew that Dr. Pustilnik was conducting an unnecessary firearms/ballistic report he was incompetent to conduct as a medical doctor. In fact, the County Defendants had such specific knowledge of Dr. Pustilnik's conduct that they blamed Plaintiff for Dr. Pustilnik's delay.

152.    The County Defendants knew that the SLPD had already prepared a firearms report based on their professional experience with guns, gunshots, and gunshot deaths, and that there was no rational basis for a medical doctor to conduct a firearms test to disprove the findings of law enforcement.

153.    Despite their specific knowledge of Dr. Pustilnik's conduct, the County

Defendants took no action to investigate or interview Dr. Pustilnik, or make any inquiry to

determine whether any why a medical doctor would need to conduct a firearms test when

law enforcement had already completed an official firearms examination and concluded

that the Mr. Atkinson's death was a suicide.

154.    As a result of their ratification of Dr. Pustilnik**'s** delay in the issue of a death

certificate, the County Defendants are liable to Plaintiff under 18 U.S.C. § 1983 for

damages, including emotional distress damages, business damages, and damages to

customer relations, in an amount to be determined at trial, together with an award of

attorneys' fees and punitive damages.

155.    The County Defendants now are unmistakenly fully aware that Dr. Pustilnik's

death certificate contradicts the findings of law enforcement based on an unnecessary and

irrational firearms study performed by an incompetent medical doctor and have chosen to

take no action to determine whether the death certificate is false or accurate and have

therefore ratified Dr. Pustilnik's conduct in violating Plaintiff's First Amendment rights,

and are further liable 18 U.S.C. § 1983 for Plaintiff's damages resulting from the issuance

of a false death certificate, including emotional distress damages, business damages, and

damages to customer relations, in an amount to be determined at trial, together with an

award of attorneys' fees and punitive damages.

## COUNT XIII
### Violation of Equal Protection
### Bystander Liability
### (County Defendants)

156.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

157.    Plaintiff's equal protection rights were violated by the discriminatory manner in which the final death certificate was issued to her, as set forth in paragraphs 131-140 above.

158.    The County Defendants knew that Dr. Pustilnik was delaying the issuance of death certificate Plaintiff.

159.    Plaintiff's counsel expressly and directly informed the County Defendants of Dr. Pustilnik's conduct in delaying the issuance of the death certificate as part of his petty vindictiveness against Plaintiff's brother.

160.    The County Defendants also knew that Dr. Pustilnik had prepared a false death certificate that directly contradicted the findings of the SLPD made close to the time of Mr. Atkinson's death.

161.    The County Defendants had months to step in and exercise the power they had over Dr. Pustilnik to cause a death certificate to be issued in a non-discriminatory manner consistent with the ordinary length of time for the issuance of a death certificate, without an irrational and duplicative firearms study conducted by a medical doctor and without bias against a resident of Fort Bend County of Mexican descent.

162.    The County chose to take no action to insist that Dr. Pustilnik comply with his duties, produce a death certificate in a timely manner, avoid discriminating against Plaintiff, produce an accurate certificate, correct the false death certificate, conduct a new inquest, conduct a new investigation, or otherwise require Pustilnik to treat Plaintiff in a

similar manner to other parties with a substantive interest in the issuance of timely and accurate death certificates.

163.    As a result of the foregoing, the County Defendants are liable to plaintiff under 18 U.S.C. § 1983 for the damages resulting from the violation of her equal protection rights, including emotional distress damages, damages to Plaintiff's business, and damages to her commercial relations, in an amount to be determined at trial, together with an award of punitive damages and attorneys' fees under 18 U.S.C. § 1983.

**WHEREFORE**, Plaintiff demands judgment:

(1) Under Count I, for damages under 18 U.S.C. § 1983 resulting from Dr. Pustilnik's violation of Plaintiff's First Amendment rights in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(2) Under Count II, for damages under 18 U.S.C. § 1983 resulting from the County Defendants' supervisory liability for Dr. Pustilnik's violation of Plaintiff's First Amendment rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(3) Under Count III, for damages under 18 U.S.C. § 1983 resulting from the County Defendants' ratification of Dr. Pustilnik's violation of Plaintiff's First Amendment rights in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(4) Under Count IV for damages under 18 U.S.C. § 1983 resulting from Dr. Pustilnik's violation of Plaintiff's substantive due process rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(5) Under Count V for damages under 18 U.S.C. § 1983 resulting from Dr. Pustilnik's violation of Plaintiff's procedural due process rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(6) Under Count VI for damages under 18 U.S.C. § 1983 resulting from the County Defendants' supervisory liability for Dr. Pustilnik's violation of Plaintiff's substantive due process rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(7) Under Count VII for damages under 18 U.S.C § 1983 resulting from the County Defendants' ratification of Dr. Pustilnik's violation of Plaintiff's substantive due process rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(8) Under Count VIII for damages under 18 U.S.C § 1983 resulting from the County Defendants' bystander liability in connection with Dr. Pustilnik's violation of Plaintiff's First Amendment rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(9) Under Count IX, for damages under 18 U.S.C § 1983 resulting from the County Defendants' bystander liability in connection with Dr. Pustilnik's violation of Plaintiff's substantive due process rights, in an amount to be determined at trial, together with an award of attorneys' fees and punitive damages;

(10)      Under Count X for damages under 18 U.S.C. § 1983 resulting from Dr. Pustilnik's violation of Plaintiff's equal protection rights under the Fourteenth

Amendment, in an amount to be determined at trial together with an award of

attorneys' fees and punitive damages;

(11)      Under Count XI for damages under 18 U.S.C. § 1983 resulting from the

County Defendants' supervisory liability for Dr. Pustilnik's violation of Plaintiff's

equal protection rights under the Fourteenth Amendment, in an amount to be

determined at trial together with an award of attorneys' fees and punitive damages;

(12)      Under Count XII, for damages under 18 U.S.C. § 1983 resulting from the

County Defendants' ratification of Dr. Pustilnik's violation of Plaintiff's equal

protection rights under the Fourteenth Amendment, in an amount to be determined at

trial, together with an award of attorneys' fees and punitive damages;

(13)      Under Count XIII, for damages under 18 U.S.C. § 1983 resulting from the

County Defendants' bystander liability for Dr. Pustilnik's violation of Plaintiff's

equal protection rights under the Fourteenth Amendment, in an amount to be

determined at trial, together with an award of attorneys' fees and punitive damages;

(14)      Such other relief as the Court deems just and proper.


**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

***/s/ Eden P. Quainton, pro hac vice***
Eden P. Quainton
Jonathan S. Gross
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
(212) 419-0575
(212) 376-5699
eden.quainton@quaintonlaw.net

*/s/ Ty Clevenger*
Ty Clevenger
Texas Bar No. 24034380
147 Prince Street, Suite 2-15
Brooklyn, New York 11201
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Counsel for Plaintiff**

## Certificate of Service

I certify that I filed the foregoing Unopposed Motion for Extension of Time on July 24, 2024 via the Court's ECF system, which should result in automatic notification via email to Kenneth Cannata (kenneth.cannata@fortbendcountytx.gov)  and Rolf Krueger (rolf.krueger@fortbendcountytx.gov).

**/s/ Eden P. Quainton**
Eden P. Quainton