United States District Court
Southern District of Texas
**ENTERED**
October 08, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| YVETTE S. ATKINSON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:22-cv-04315 |
| | § | |
| STEPHEN PUSTILNIK, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### <u>OPINION AND ORDER</u>

This case arises out of the tragic death of Simon J. Atkinson ("Mr. Atkinson"). His widow, Plaintiff Yvette S. Atkinson ("Ms. Atkinson"), alleges that Fort Bend County Medical Examiner Stephen Pustilnik, M.D. ("Dr. Pustilnik") improperly delayed issuing her husband's final death certificate and then, in retaliation for Ms. Atkinson's filing of this lawsuit, falsely classified Mr. Atkinson's death as a homicide. Ms. Atkinson brings claims under 42 U.S.C. § 1983 against Dr. Pustilnik in his individual capacity for First Amendment retaliation; violation of her equal protection rights; and violation of her procedural and substantive due process rights.[1] Ms. Atkinson advances the same claims against the Fort Bend Defendants[2] under theories of ratification, supervisor liability, and bystander liability. Ms. Atkinson seeks actual damages, punitive damages, and attorneys' fees. The Individual Fort Bend Defendants are sued in their individual capacities.[3]

---

[1] Throughout the Third Amended Complaint, Plaintiff repeatedly refers to "18 U.S.C. § 1983," which is a nonexistent statutory provision.

[2] The Fort Bend Defendants are Fort Bend County Judge KP George ("Judge George")— incorrectly named by Ms. Atkinson as "J.P. George"—Fort Bend County Commissioners Vincent Morales ("Morales"), Grady Prestage ("Prestage"), W.A. "Andy" Meyers ("Meyers"), Dexter L. McCoy ("McCoy"), and Kenneth R. DeMerchant ("DeMerchant") (collectively "the Individual Fort Bend Defendants"), and Fort Bend County.

[3] Ms. Atkinson specifies that each of the Individual Fort Bend Defendants, except for McCoy, is sued in his individual capacity. The Third Amended Complaint, the live pleading in this case, does not indicate whether McCoy is sued in his individual capacity,

Pending before me are two motions to dismiss—one filed by Dr. Pustilnik and the other filed by the Fort Bend Defendants. *See* Dkts. 76, 77. Having reviewed the briefing and applicable law, I grant both motions.

**BACKGROUND**[4]

On June 5, 2020, Mr. Atkinson died of a gunshot wound in Sugar Land, Texas. A forensic pathologist, Dr. William McClain ("Dr. McClain"), "performed an autopsy within days [of Mr. Atkinson's death] and found no evidence of foul play." Dkt. 75 at 3. The Sugar Land Police Department ("SLPD") investigated Mr. Atkinson's death and concluded that Mr. Atkinson died by suicide. The SLPD's investigation included a firearms test using the gun found near Mr. Atkinson's body and the ammunition found in Mr. Atkinson's pocket. SLPD determined "(1) that the gun found near Mr. Atkinson's body was the gun that he used to kill himself and (2) that the ammunition in his pocket matched the fatal bullet." *Id.* at 4. Mr. Atkinson's body was released to his family and cremated.

For Ms. Atkinson, obtaining a final death certificate was important because she stood to receive $1 million in life insurance benefits. Delayed issuance of Mr. Atkinson's final death certificate would, Ms. Atkinson claims, delay her recovery of insurance proceeds.

Approximately a week after the autopsy, no death certificate had been issued. Ms. Atkinson's brother, Steven Sanchez, called Dr. Pustilnik to inquire why a death certificate had yet to be issued. The conversation allegedly became a "heated argument." *Id.*

---

official capacity, or both. I will assume for the sake of argument that McCoy is sued in both his individual and official capacities. Regardless, because Fort Bend County is a named defendant, an official capacity suit against McCoy is redundant. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

[4] This section recounts the allegations set forth in the Third Amended Complaint, the live pleading.

A few days later, on June 16, 2020, an initial death certificate for Mr. Atkinson was released, signed by Dr. McClain. The death certificate stated that both Mr. Atkinson's cause and manner of death were "Pending Investigation," and that autopsy findings were not available to complete the cause of death.[5] Dkt. 76-1 at 3. Ms. Atkinson claims that Dr. Pustilnik, upset by his phone conversation with Sanchez, "retaliated by refusing to list a cause of death on Mr. Atkinson's death certificate." Dkt. 75 at 4–5. A few months later, Sanchez contacted Judge George on behalf of Ms. Atkinson. Judge George told Sanchez that he could not do anything because of an ongoing investigation into Mr. Atkinson's death.

More than a year after Mr. Atkinson died, Dr. Pustilnik convened an inquest into Mr. Atkinson's death. Ms. Atkinson alleges that Dr. Pustilnik "ordered [her] to produce all ammunition in the Atkinson household that had been purchased for the firearm that Mr. Atkinson used to kill himself, purportedly so [Dr.] Pustilnik . . . could conduct his own firearms test" on the gun that allegedly killed Mr. Atkinson. *Id.* at 6–7. Ms. Atkinson argued to a local Justice of the Peace that Dr. Pustilnik did not need the ammunition in her house, but the JP ordered Ms. Atkinson to produce the ammunition. Ms. Atkinson ultimately produced the ammunition on June 1, 2022.

After the inquest, months passed without any word from Dr. Pustilnik on the cause and manner of Mr. Atkinson's death. In October 2022, Ms. Atkinson's counsel sent several communications to Fort Bend County officials, complaining about the delay and threatening litigation. On October 13, 2022, Fort Bend County's counsel sent an email to Ms. Atkinson's counsel promising that Dr. Pustilnik would soon be issuing an amended death certificate listing the cause and manner of death.

---

[5] It is important not to confuse cause of death with manner of death. The possible causes of death are as innumerable as the diseases and conditions that afflict humanity. In contrast, there are only four manners of death: natural, accidental, suicide, and homicide. *See, e.g.*, *Reliastar Life Ins. Co. v. Thompson*, No. M-07-cv-140, 2008 WL 4327259, at *3 (S.D. Tex. Sept. 16, 2008); *see also* Dkt. 76-1 at 3.

On December 13, 2022, still awaiting Mr. Atkinson's final death certificate, Ms. Atkinson filed this lawsuit. On January 19, 2023, Dr. Pustilnik finally issued an amended death certificate that lists Mr. Atkinson's cause of death as a gunshot wound of the head, and his manner of death as homicide. *See* Dkt. 76-1 at 3. It took 958 days—or 2 years, 7 months, 14 days—for Dr. Pustilnik to determine Mr. Atkinson's cause and manner of death. Ms. Atkinson claims that Dr. Pustilnik falsely classified Mr. Atkinson's manner of death as homicide in retaliation for Ms. Atkinson filing this lawsuit.

On April 21, 2023, Dr. Pustilnik and the Fort Bend Defendants filed motions to dismiss. *See* Dkts. 27, 28. On May 2, 2024, I issued an opinion and order that denied Dr. Pustilnik's motion to dismiss as to Ms. Atkinson's First Amendment retaliation claim but granted the motion in all other respects. *See Atkinson v. Pustilnik*, No. 4:22-cv-04315, 2024 WL 1937860, at *16 (S.D. Tex. May 2, 2024). I granted the Fort Bend Defendants' motion to dismiss as to all claims. *See id.*

On November 13, 2024, I gave Ms. Atkinson leave to file a third amended complaint. *See* Dkt. 64. The Third Amended Complaint is the operative pleading. *See* Dkt. 75. Defendants have again moved to dismiss, advancing similar arguments to those made during the first round of motion to dismiss briefing. Dr. Pustilnik argues that he is entitled to qualified immunity and insists that he has not violated a statutory or constitutional right. Even if he did, Dr. Pustilnik contends that any such right was not clearly established at the time he issued Mr. Atkinson's death certificate. The Fort Bend Defendants have also moved to dismiss, arguing that Ms. Atkinson has failed to state a claim under any theory of liability: ratification, supervisor liability, or bystander liability. The Individual Fort Bend Defendants assert that they are also protected by qualified immunity.

## LEGAL STANDARDS

### A.   RULE 12(b)(6)

To avoid early dismissal of a lawsuit, a plaintiff must file a complaint that provides "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails "to state a claim upon which relief can be granted," dismissal is appropriate. Fed. R. Civ. P. 12(b)(6). Overcoming this initial hurdle requires the plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard is lower than "a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). At this stage, I accept "all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

"In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff." *Tex. Health & Hum. Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016). "A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). There are also limited categories of documents outside of the pleadings that I may consider. First, I am permitted "to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted). Second, I may consider "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quotation omitted). Finally, I "may permissibly refer to matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

**B.    42 U.S.C. § 1983**

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). Local governing bodies are not liable under § 1983 based merely on the actions of their employees. *See Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). A plaintiff may sue a local governmental body under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978). Direct municipal liability under § 1983 requires a plaintiff to identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle*, 613 F.3d at 541–42 (quotation omitted).

**C.    QUALIFIED IMMUNITY**

Government officials sued in their individual capacity under § 1983 are entitled to qualified immunity, which is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th

Cir. 2016). It is a judicially created doctrine designed to avoid "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). The doctrine arises from "the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Id.* (citation modified).

To overcome qualified immunity, a plaintiff must allege facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). "These steps may be considered in either order." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018).

The first prong of the qualified immunity inquiry asks whether the facts alleged "show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a plaintiff's allegations, viewed favorably, do not establish a constitutional violation, no further inquiry is necessary. *See id.* "To surmount this barrier at the motion to dismiss stage, the plaintiffs must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm they have alleged and that defeat a qualified immunity defense with equal specificity." *Torns v. City of Jackson*, 622 F. App'x 414, 416 (5th Cir. 2015) (citation modified).

"The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotation omitted). Governmental actors are "shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation omitted). "[T]he salient question . . . is whether the state of the law" at the time of an incident provided

"fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id.* at 741. A plaintiff bears a heavy burden on this prong because a right is clearly established only if relevant precedent "ha[s] placed the . . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

## ANALYSIS

Because every individual defendant asserts qualified immunity, I must conduct the qualified immunity analysis described above. For each claim, I begin by ascertaining whether Ms. Atkinson has established the violation of a statutory or constitutional right.

### A.    FIRST AMENDMENT RETALIATION

Ms. Atkinson claims that Dr. Pustilnik retaliated against her when, a few weeks after she filed this lawsuit, Dr. Pustilnik issued a final death certificate designating Mr. Atkinson's manner of death as homicide. Ms. Atkinson seeks to hold Dr. Pustilnik directly liable for this alleged retaliation. She also seeks to hold the Fort Bend Defendants liable for this alleged retaliation under theories of ratification, supervisor liability, and bystander liability.

"[T]he First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms." *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999). To state a claim for First Amendment retaliation, Ms. Atkinson must plead that "(1) [she] engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against [her] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). The second element "requires some showing that [Ms. Atkinson's] exercise of free speech has been curtailed." *Id.* at 259.

"It is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances." *Wilson v. Thompson*,

593 F.2d 1375, 1387 (5th Cir. 1979). Thus, there is no question that Ms. Atkinson satisfies the first element of her claim—she clearly engaged in a constitutionally protected activity when she filed this lawsuit. Defendants do not contest that the first element is satisfied. Nor do Defendants contest that an allegedly falsified death certificate constitutes an adverse action. Thus, the first and third elements are not in dispute. Dr. Pustilnik advances a single argument, which the Fort Bend Defendants have adopted,[6] as to why Ms. Atkinson's First Amendment retaliation claim fails now, despite previously surviving a motion to dismiss: Ms. Atkinson fails to allege the second element—that her speech was curtailed—even though she advanced such an allegation in previous complaints.

In ruling on Dr. Pustilnik's first motion to dismiss, I found that Ms. Atkinson alleged curtailment because she pleaded "that 'if another family member dies in Fort Bend County (God forbid), [she] now knows that she had better not make any complaint to or about [Dr.] Pustilnik lest he retaliate again.'" *Atkinson*, 2024 WL 1937860, at *8 (quoting Dkt. 21 at 17). Ms. Atkinson inexplicably omitted this allegation from the operative pleading. Dr. Pustilnik argues that this omission is fatal to Ms. Atkinson's First Amendment retaliation claim. Ms. Atkinson retorts that I have already permitted her First Amendment claim to proceed; she "has not waived" that claim; and "[Dr.] Pustilnik is well aware of the prior pleadings and the Court's holding in the [May 2, 2024] Opinion and Order." Dkt. 78 at 6 (citation modified). None of Ms. Atkinson's arguments are availing.

A prior "complaint, once voluntarily amended, cannot be used to cure the defects in an amended complaint." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 n.3 (5th Cir. 1985). Ms. Atkinson argues that her First Amendment retaliation "claim did not become less plausible on its face because she did not expressly incorporate by reference each and every word of the prior pleadings." Dkt. 78 at 7.

---

[6] "The 'Fort Bend Defendants' incorporate by reference and adopt as if fully stated verbatim the statements, arguments and authorities set forth in Dr. Pustilnik's Motion to Dismiss Plaintiff's Third Amended Complaint Under Rule 12(b)(6)." Dkt. 77 at 1.

But it did. Fifth Circuit precedent clearly establishes that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Because Ms. Atkinson did not specifically refer to and adopt or incorporate by reference her earlier pleadings, I cannot consider them.

From the Defendants' perspective, Ms. Atkinson's "withdrawal, in [her Third] Amended Complaint, of [her] previous factual allegations [concerning curtailment of speech] could have been not due to a mistake . . . but due to . . . the duties imposed on [her] counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure." *Jones v. McMahon*, No. 5:98-cv-0374, 2007 WL 2027910, at *7, 9 (N.D.N.Y. July 11, 2007) (refusing to consider superseded allegations from an earlier complaint, stating that "The Court cannot replead Plaintiffs' case for them." (citation modified)). Dr. Pustilnik advances such an argument, contending that Ms. Atkinson's "insistence not to include these necessary allegations is evidence that the [retaliation] claim: (i) lacks evidentiary support and (ii) will not have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3)." Dkt. 80 at 5.

It is not for me to speculate *why* Ms. Atkinson omitted this necessary allegation from her amended complaint. What is important is that (1) Ms. Atkinson is not proceeding pro se—she is represented by qualified counsel; (2) she has been afforded three opportunities to amend her complaint, including *after* a motion to dismiss in which I explicitly credited her allegation of curtailment as a reason why her retaliation claim should survive; (3) despite this, she failed to allege curtailment in the operative pleading; and (4) she failed to adopt or incorporate by reference her earlier pleadings, which have been superseded.

Because Ms. Atkinson does not allege that Dr. Pustilnik's alleged actions curtailed her speech, she fails to state a First Amendment retaliation claim. Without an underlying constitutional violation, Dr. Pustilnik cannot be found

liable for First Amendment retaliation; nor can the Fort Bend Defendants be held liable for Dr. Pustilnik's actions. *See Pena v. Givens*, 637 F. App'x 775, 785 (5th Cir. 2015) ("Supervisory liability requires a constitutional violation by a subordinate."). In sum, Ms. Atkinson's First Amendment retaliation claims against Defendants must be dismissed because Ms. Atkinson "fails to plead that the Defendants' retaliatory conduct actually curtailed [her] speech." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

## B.    VIOLATION OF EQUAL PROTECTION RIGHTS

Ms. Atkinson claims that Defendants violated her right to equal protection. "An equal protection claim depends on either identifying a class or showing that the aggrieved party is a 'class of one.'" *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (citation modified). It is unclear which of these avenues Ms. Atkinson is pursuing. On the one hand, Ms. Atkinson asserts that "Dr. Pustilnik classified Mr. Atkinson's death a homicide" because "he was motivated by ethnic, racial and/or gender animus." Dkt. 75 at 14. That suggests Ms. Atkinson is claiming to be a member of a class. Yet, Ms. Atkinson also alleges that Dr. Pustilnik "singled [her] out" and treated her differently from "other County residents whose next-of-kin died from a gunshot wounds [sic] and had a property interest in timely issued and accurate death certificates." *Id.* at 16, 18. That sounds like a "class of one." There is no need, however, to determine whether Ms. Atkinson is alleging an equal protection violation based on her membership in a protected class or as a "class of one." Her equal protection claim fails either way.

### *1.    Class-of-One Claim*

"The Equal Protection Clause [of the Fourteenth Amendment] directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). In *Village of Willowbrook v. Olech*, the Supreme Court reiterated that equal protection claims based on a "class of one" are cognizable. 528 U.S. 562, 564 (2000). To state such a claim, the plaintiff must sufficiently allege that "(1) he or she was treated differently from others similarly situated and

(2) there was no rational basis for the disparate treatment." *Stotter v. Univ. of Tex.*
*at San Antonio*, 508 F.3d 812, 824 (5th Cir. 2007).

Ms. Atkinson has failed to sufficiently allege that she was treated differently
than other similarly situated individuals. The Fifth Circuit has explained that this
inquiry is highly fact-specific:

> The legal requirement that a class-of-one plaintiff's
> comparators be similarly situated is not a requirement susceptible to
> rigid, mechanical application—there is no precise formula to
> determine whether an individual is similarly situated to comparators.
> Several of our sister circuits, confronting this issue, have stated that,
> in order to be similarly situated, comparators must be *prima facie*
> identical in all relevant aspects. But this statement simply raises new
> questions. What aspects of a particular case are relevant? What is
> relevant in one case might not be relevant in another, for example, and
> the degree to which others are viewed as similarly situated necessarily
> will depend substantially on the facts and context of the case. In short,
> the inquiry is case-specific and requires us to consider the full variety
> of factors than an objectively reasonable decisionmaker would have
> found relevant in making the challenged decision.

*Lindquist v. City of Pasadena*, 669 F.3d 225, 233–34 (5th Cir. 2012) (citation
modified).

In the operative pleading, Ms. Atkinson discusses the number of days
between each homicide and suicide that took place in Sugar Land in calendar year
2022—the year Mr. Atkinson died—and the issuance of a final death certificate for
those decedents. Ms. Atkinson discusses twelve of these decedents by name,
including the circumstances of their death. *See* Dkt. 75 at 16–18. This data shows
that the time between Mr. Atkinson's death and the issuance of his final death
certificate was 679 more days than "the second-longest period for issuance of a
death certificate since 2020." *Id.* at 16. Yet, Ms. Atkinson never explains how
*decedents* can be similarly situated comparators to *her*, a living person. Indeed,
Ms. Atkinson claims to be comparing herself to "County residents whose next-of-
kin died from a gunshot wounds [sic] and had a property interest in timely issued
and accurate death certificates." *Id.* at 18. Yet, Ms. Atkinson does not identify any

County residents or discuss any of the survivors of any of these decedents. Rather, she identifies only people who died in Sugar Land. The dead are not Ms. Atkinson's comparators. It is Ms. Atkinson who is asserting an equal protection claim, not her deceased husband. Ms. Atkinson's failure to identify individuals similarly situated to her dooms her claim.

But there is another, simpler reason that Ms. Atkinson's class-of-one claim fails. "The class-of-one rationale does not apply to 'forms of state action which by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments.'" *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015) (quoting *Engquist v. Or. Dep't of Agr.,* 553 U.S. 591, 603 (2008) (citation modified)). Courts should be "wary of turning even quotidian exercises of government discretion into constitutional causes." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quotation omitted). As the Tenth Circuit Court of Appeals has explained:

> These concerns are magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. The latitude afforded police officers, IRS agents, university administrators, zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed.

*Id.* at 1216–17.

In *Engquist*, the Supreme Court held that class-of-one equal protection claims are not cognizable in the context of public employment. *See* 553 U.S. at 609. The Fifth Circuit has since extended that holding to "a city's decision to purchase services from private companies";[7] the state's decision to re-test pentobarbital for some prisoners sentenced to death but not others;[8] and a city's decision to revoke a permit.[9] District courts within the Fifth Circuit have found these precedents to

---

[7] *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 587 (5th Cir. 2016).

[8] *See Wood v. Collier*, 836 F.3d 534, 541 (5th Cir. 2016).

[9] *See Rountree v. Dyson*, 892 F.3d 681, 684 (5th Cir. 2018).

extend to a wide range of prison officials' decisions;[10] officials' decisions to arrest, incarcerate, search, or prosecute an individual;[11] a city's decision to deny a plaintiff's request to initiate a review process for removal of a statue;[12] the state's decision to subject a public school official to a recall vote;[13] a sheriff's decision to remove someone from the bail bond writing list;[14] and the decision to impose a coaching suspension.[15] Other circuits have made analogous determinations. For example, the Eighth Circuit has held that "while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim." *Flowers v. City of Minneapolis*, 558 F.3d 794, 799–800 (8th Cir. 2009). If a police officer's investigative decisions cannot be attacked in a class-of-one claim, I do not see how an attack on a medical examiner's investigative decisions should fare any better.

Admittedly, I have found no cases addressing whether class-of-one claims are available in the context of challenging a medical examiner's decisions.[16] Even

---

[10] *See Striz v. Collier*, No. 3:18-cv-202, 2020 WL 7868102, at *13 (S.D. Tex. Nov. 24, 2020) (Brown, J.) (decision to confine inmate to administrative segregation), *aff'd*, No. 20-40878, 2022 WL 1421834 (5th Cir. May 5, 2022); *Milton v. Smith*, No. CV 19-0214, 2019 WL 1852688, at *5 (W.D. La. Apr. 10, 2019) (decision to grant or deny work release); *Billiot v. Roche*, No. CV 20-61, 2021 WL 7906831, at *2 (M.D. La. Dec. 29, 2021) (disciplinary or parole proceedings).

[11] *See Hartman v. Walker*, No. 1:13-cv-355, 2015 WL 5470261, at *21–22 (E.D. Tex. Sept. 16, 2015), *aff'd*, 685 F. App'x. 366 (5th Cir. 2017).

[12] *See Monumental Task Comm., Inc. v. Foxx*, No. 16-12495, 2016 WL 5780194, at *6 (E.D. La. Oct. 4, 2016).

[13] *See Smith v. N. Bolivar Sch. Dist.*, No. 2:07-cv-51, 2009 WL 10675322, at *3 (N.D. Miss. Jan. 30, 2009).

[14] *See Morgan v. Hamp*, No. 3:17-cv-102, 2018 WL 2422322, at *3 (N.D. Miss. May 29, 2018).

[15] *See Burkhart v. Univ. Interscholastic League*, No. 1:22-cv-1026, 2023 WL 2940026, at *7 (W.D. Tex. Apr. 13, 2023).

[16] I have struggled to locate a case like this case. Most cases that mention medical examiners and death certificates concern either evidentiary errors at trial or issues with the Confrontation Clause—not § 1983 claims against a medical examiner for civil rights violations. This fact suggests that, even if a class-of-one claim were available in this context, the individual defendants would likely be entitled to qualified immunity.

so, I am confident that, if confronted with the question, the Fifth Circuit will hold that the discretionary decision to classify a decedent's manner of death has no "clear standard against which departures, even for a single plaintiff, [may] be readily assessed." *Integrity*, 837 F.3d at 587. Thus, a class-of-one equal protection claim is not cognizable in the context of challenging medical examiner's decisions regarding the issuance of death certificates. For this reason, Ms. Atkinson's class-of-one equal protection claim against every defendant must be dismissed for failure to state a claim.

### 2. *Disparate Treatment Equal Protection Claim*

To the extent Ms. Atkinson is not advancing a class-of-one claim but a claim based on her membership in some protected class, that claim also fails.

"To establish discriminatory intent, a plaintiff must show that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quotation omitted). "Allegations of discriminatory intent that are merely conclusory, without reference to specific facts, will not suffice." *Id.* (citation modified). But conclusory allegations are all that Ms. Atkinson has advanced.

These are the only allegations in the operative pleading that pertain to discriminatory intent:

- "Plaintiff is a woman of Mexican origin whose maiden name is Sanchez."

- "Dr. Pustilnik knows that Plaintiff is of Mexican origin (her maiden name is Sanchez, which is also her brother's last name) and displayed vicious and unbridled animus against her as a result of her ethnic background."

- "[Dr. Pustilnik] was motivated by ethnic, racial and/or gender animus against Plaintiff."

- "In addition, there is *prima facie* evidence that Dr. Pustilnik was animated by ethnic animus against Plaintiff and his violation of Plaintiff's equal protection rights is therefore subject to strict scrutiny."

- "The County Defendants had months to step in and exercise the power they had over Dr. Pustilnik to cause a death certificate to be issued in a non-discriminatory manner consistent with the ordinary length of time for the issuance of a death certificate, without an irrational and duplicative firearms study conducted by a medical doctor and without bias against a resident of Fort Bend County of Mexican descent."

Dkt. 75 at 2, 7, 14, 34, 38. Nothing about these allegations suggests discriminatory intent. "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004). Accordingly, to the extent that Ms. Atkinson's equal protection claim is based upon her membership in a protected class, that claim must be dismissed as to all defendants for failure to state a claim.

## C.   VIOLATION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS

Ms. Atkinson next claims that Dr. Pustilnik violated her procedural and substantive due process rights when he failed to timely and accurately issue Mr. Atkinson's death certificate. In addition to Dr. Pustilnik's alleged direct liability, Ms. Atkinson seeks to hold the Fort Bend Defendants liable for these alleged due process violations under theories of ratification, supervisor liability, and bystander liability.

The Fourteenth Amendment provides that no state shall deprive any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause embodies two "distinct" concepts: procedural due process and substantive due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "Procedural due process requires the government to follow appropriate procedures before it deprives a person of an interest in life, liberty, or property; substantive due process ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes." *Patterson v. Def. POW/MIA Acct. Agency*, 398 F. Supp. 3d 102, 116 (W.D. Tex. 2019) (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). "In other words, procedural due process guarantees that a state proceeding which results in a

deprivation of property is fair, while substantive due process ensures that such state action is not arbitrary and capricious." *Id.* (quotation omitted). To prevail on either claim, Ms. Atkinson must establish a protected interest. Here, Ms. Atkinson claims a property interest "in the timely and accurate issuance of a death certificate." Dkt. 75 at 27.

"[F]or a person to have a property interest within the ambit of the Fourteenth Amendment, he 'must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn*, 42 F.3d at 936–37. But "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

Ms. Atkinson contends, without reference to any state law, that she has "property rights in the timely and accurate issuance of a death certificate." Dkt. 75 at 27. Dr. Pustilnik counters that "[t]here is no constitutional right to have access to particular government information." Dkt. 80 at 7 (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978)). *Houchins* concerned "whether the news media have a constitutional right of access to a county jail, over and above that of other persons, to interview inmates and make sound recordings, films, and photographs for publication and broadcasting by newspapers, radio, and television." 438 U.S. at 3. *Houchins* did not refer to state law or property rights—in fact, the word "property" does not even appear in the *Houchins* opinion, concurrence, or dissent—and is readily distinguishable from the case at bar. Although the parties have been of little assistance, I have no trouble concluding that Texas state law vests Ms. Atkinson with a property interest in Mr. Atkinson's physical death certificate.

The Texas Health and Safety Code provides that "the state registrar shall supply to a properly qualified applicant, on request, a certified copy of a record, or part of a record, of a birth, death, or fetal death registered under this title." Tex. Health & Safety Code Ann. § 191.051(a). As Mr. Atkinson's "immediate family member" by marriage, Ms. Atkinson is a properly qualified applicant to whom the state registrar must supply a certified copy of Mr. Atkinson's death certificate. 25 Tex. Admin. Code § 181.1(21). Thus, Texas state law grants Ms. Atkinson a property right in Mr. Atkinson's death certificate. Yet, Ms. Atkinson has had access to a physical death certificate since June 16, 2020, when Dr. McClain issued the initial death certificate. *See* Dkt. 76-1 at 3. To the extent Ms. Atkinson claims that she was deprived of her property interest in a physical death certificate, that claim fails on its face.

Beyond the physical death certificate itself, Ms. Atkinson asserts a property interest in "the timely and accurate issuance of a death certificate." Dkt. 75 at 27. Ms. Atkinson does not, however, in the operative pleading or her response to the motion to dismiss, point me to any state law that creates such a property interest. *See Blackburn*, 42 F.3d at 936–37. The few Texas cases I have found where plaintiffs seek mandamus "to compel the medical examiner to change the official cause of death" have uniformly held that such a decision is discretionary and not subject to mandamus relief. *Erazo v. Sanchez*, 502 S.W.3d 894, 900 n.4 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Lauer v. Travis Cnty. Med. Examiners*, No. 13-13-00610-CV, 2014 WL 4402233, at *2 (Tex. App.—Corpus Christi–Edinburg Sept. 2, 2014, no pet.)). In other words, a medical examiner's "conclusion as to manner of death . . . is an opinion reached through the exercise of discretion." *Wallbro v. Nolte*, 511 P.3d 348, 355 (N.M. Ct. App. 2021).

In Texas, "[c]ourts are split as to whether findings such as 'suicide' or 'accident' in a death certificate are facts or opinions." *Tex. Workers' Comp. Comm'n v. Wausau Underwriters Ins.*, 127 S.W.3d 50, 60 n.9 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (collecting cases from Texas state courts and

the Fifth Circuit). But, as with the death certificate in *Wallbro*, Mr. Atkinson's death certificate states: "On the basis of examination, and/or investigation, in my *opinion*, death occurred at the time, date and place, and due to the cause(s) and manner stated." Dkt. 76-1 at 3 (emphasis added). I cannot fathom the Fifth Circuit holding that anyone has a property interest in an opinion. *See, e.g.*, *Cantu v. Austin Police Dep't*, No. 1:21-cv-00084, 2021 WL 5599648, at *11 (W.D. Tex. Nov. 30, 2021) ("Plaintiffs have not stated a claim for a fundamental interest in a forensic death investigation carried out in the manner they prefer and have not alleged any property interest relating to [the decedent]'s autopsy that would support a due process violation."). Because Ms. Atkinson did not establish a constitutionally protected property interest, she cannot state a due process claim against Defendants.

## CONCLUSION

Because Ms. Atkinson has failed to state any constitutional violation against any defendant, Dr. Pustilnik's motion to dismiss (Dkt. 76) and the Fort Bend Defendants' motion to dismiss (Dkt. 77) are granted. This case is dismissed. The pending motion to quash (Dkt. 95) is denied as moot. I will issue a final judgment separately.

SIGNED this 8 day of October 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE